1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
     David M. Grable (Bar No. 237765)
2      davegrable@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
4  Facsimile:   (213) 443-3100

5    Margret M. Caruso (Bar No. 243473)
       margretcaruso@quinnemanuel.com
6    555 Twin Dolphin Dr, Suite 560
   Redwood City, California 94065
7  Telephone:  (650) 801-5000
   Facsimile:   (650) 801-5100

8
     Tina T. Lo (Bar No. 311184)
9  tinalo@quinnemanuel.com
   50 California St, Suite 2200
10 San Francisco, CA 94133
   Telephone: (415) 875-6600
11 Facesimile: (415) 875-6700

12 *Attorneys for Harbor Freight Tools USA, Inc.*

13

14

15                    **UNITED STATES DISTRICT COURT**

16                    **CENTRAL DISTRICT OF CALIFORNIA**

17 HARBOR FREIGHT TOOLS USA, INC.,                CASE NO.

18              Plaintiff,                        COMPLAINT FOR:

19       v.                                       (1) Declaratory Judgment of Non-
                                                      Infringement of Trademark
20 VEHICLE SERVICE GROUP, LLC,                    (2) Declaratory Judgement of No
                                                      Dilution of Trademark
21              Defendant.

22                                                Trial Date:       None Set

23

24

25       Plaintiff Harbor Freight Tools USA, Inc. ("Harbor Freight") herby states the

26 following allegations for its Complaint against Vehicle Service Group, LLC

27 ("VSG").

28

# INTRODUCTION

1.    Since approximately December 2018, Harbor Freight has used the word "CHIEF" as a mark on pneumatic tool products (specifically, grinders, cut-off tools, scalers, riveters, drills, impact hammers, shears, nibblers, and saws).  VSG has expressed to Harbor Freight that it views Harbor Freight's use of the CHIEF Mark on Harbor Freight's pneumatic tool products and accessories as likely to cause confusion as to source for consumers as well as confusion as to sponsorship, affiliation or connection and to dilute VSG's CHIEF mark.  Consistent with VSG's position, VSG filed an opposition to Harbor Freight's application to the U.S. Patent and Trademark Office to register CHIEF on the principal register, claiming that Harbor Freight's use is likely to cause confusion and dilution.  Based on VSG's actions and assertions of likelihood of confusion and dilution, Harbor Freight has a real and reasonable apprehension of suit and seeks declaration of non-infringement and non-dilution with respect to its use of CHIEF so that it can proceed with its business plans without the continuing risk of having to change its mark.  There is a substantial controversy between Harbor Freight and VSG with respect to Harbor Freight's use of its CHIEF mark.  The two parties have adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

2.    Despite VSG's claims, Harbor Freight's use of CHIEF is not likely to cause confusion with VSG.  Consumers are not likely to think Harbor Freight's CHIEF products or any of Harbor Freight's products are manufactured by, or otherwise associated with, VSG.  Given the different nature of the parties' respective goods, price points, channels of trade, and target customer bases for each party, there is no likelihood of confusion.  Harbor Freight does not infringe on VSG's trademark.  In addition, because there is no likelihood of confusion, Harbor

1  Freight's pending applications before the U.S. Patent Trademark Office ("USPTO")

2  should be allowed to proceed to registration.

3        3.      Harbor Freight's use of CHIEF is not likely to dilute VSG's CHIEF

4  mark.  Harbor Freight's use of CHIEF will not weaken a consumer's ability to

5  identify and distinguish VSG's CHIEF goods or services, any strength or value of

6  VSG's CHIEF mark, or VSG's business reputation.  VSG's CHIEF mark is not

7  famous or well-known among the general public of the United States, such that any

8  distinctiveness of VSG's CHIEF goods would be blurred or weakened by Harbor

9  Freight's use of CHIEF.  In addition, Harbor Freight's CHIEF goods, while different

10  in nature from VSG's goods, are not inferior to VSG's CHIEF products and would

11  not tarnish VSG's reputation or goodwill.

12        4.      This matter is ripe for a declaratory judgment because there is a

13  substantial controversy between parties having adverse legal interests of sufficient

14  immediacy and reality to warrant the issuance of a declaratory judgment.

## PARTIES

16        5.      Plaintiff Harbor Freight is a Delaware corporation with a principal

17  place of business at 26541 Agoura Road, Calabasas, California.  Harbor Freight's

18

19

20

21

22

23

24

25

26

27

28

Case No.
Complaint

1   national headquarters are located in Calabasas, California, and all corporate officers

2   are located there.

3       6.      On information and belief, Defendant VSG is a Delaware limited

4   liability company with a principal place of business in Madison, Indiana.

5                           **JURISDICTION AND VENUE**

6       7.      This Court has subject matter jurisdiction over this action pursuant to

7   15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, 1367, and 2201, because this action

8   is for declaratory judgment involving trademarks and an actual case or controversy

9   exists between Harbor Freight and VSG, and because this action involves claims

10  arising under the Lanham Act (15 U.S.C. §§ 1051 *et seq.*).

11      8.      This Court has personal jurisdiction over VSG, because VSG has

12  purposefully directed its activities at this state, as it has committed an intentional act

13  by sending letters expressly aimed at this forum and targeted at Harbor Freight,

14  demanding Harbor Freight abandon its trademark application for the goods it

15  approves and sells from this forum, and accusing Harbor Freight's use of CHIEF on

16  those goods as likely to cause confusion.  VSG's actions have caused harm to

17  Harbor Freight in this forum.  This declaratory judgment action arises out of or

18  relates to VSG's activities directed toward Harbor Freight in this state and in this

19  judicial district, and exercise of jurisdiction is reasonable and comports with fair

20  play and substantial justice.  In addition, on information and belief, VSG offers its

21  CHIEF products for sale in O'Reilly Auto Parts stores throughout this state and this

22  judicial district.  On information and belief, VSG offers CHIEF training classes for

23  appraisers, estimators, and repair technicians in this state and this judicial district.

24  VSG has purposefully availed itself of the privilege of conducting business in the

25  state of California and has appointed an agent for service of process in this state.

26      9.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b)

27  because a substantial part of the events or omissions giving rise to Harbor Freight's

28

-4-                                              Case No.
                                                 Complaint

1  claims have occurred in this district and a substantial part of the property that is

2  subject to the action is situated in this district.

3  **FACTUAL BACKGROUND**

4  **Harbor Freight's Business and CHIEF Line of Products**

5        10.    Harbor Freight Tools started in 1977 as a small family-owned business

6  with a mission to provide working people and do-it-yourselfers with quality tools at

7  fair prices.  For over 40 years, Harbor Freight Tools has been guided by this

8  principle and now offers thousands of high quality tools and accessories at prices

9  that are affordable for an individual.

10       11.    All of Harbor Freight's products, including its CHIEF products, are

11  intended to be used by individual retail customers, particularly do-it-yourselfers, and

12  are priced accordingly.  Harbor Freight's CHIEF product line consists of handheld

13  pneumatic tools and accessories and are priced from approximately $6.00 to

14  approximately $140.00.  They are not designed for, nor promoted for, use by major

15  collision repair providers, body shop groups, dealerships or other commercial or

16

17

18

19

20

21

22

23

24

25

26

27

28

1  industrial environments.  Nor are they sold through specialized collision repair

2  distributors and representatives.

3      12.     For example, Harbor Freight offers its CHIEF rivet gun, weighing 4.5

4  pounds and with 3,400 pounds of pull force, for less than $140, as shown below:



17      13.     All of Harbor Freight's products, including its CHIEF products, are

18  sold direct to consumers only through Harbor Freight's HARBOR FREIGHT

19  channels of trade—namely its HARBOR FREIGHT retail stores, its

20  HarborFreight.com website and its HARBOR FREIGHT mail order catalogs.

21  Harbor Freight products, including its CHIEF products, are not promoted, displayed,

22  sold through third-party retail stores, sales representatives, catalogs, or websites.

23  Moreover, Harbor Freight sells virtually all of its tools under house brands.

24  Accordingly, Harbor Freight consumers expect that the tools they buy from Harbor

25  Freight are sourced from Harbor Freight.

26  **VSG's Business And Use Of CHIEF Mark**

27      14.     According to VSG's statements, it manufactures, sells, and distributes

28  highly specialized collision repair products and services, such as vehicle frame-

1  pulling equipment, vehicle anchoring systems, computerized measuring systems,

2  and vehicle lift equipment, ranging from thousands of dollars to tens of thousands of

3  dollars.  VSG's products are primarily marketed to and sold to major collision repair

4  providers, body shop groups, and dealerships through specialized collision repair

5  distributors and representatives.

6        15.    According to VSG's statements, VSG has a registered trademark in

7  CHIEF as a standard character mark (Registration Nos. 3,109,160; 3,116,781;

8  3,123,155; 3,161,976) and as a design mark (Registration Nos. 3,362,197;

9  3,362,198; 3,362,199; 3,369,094) for machines and services relating to repairing

10  collision or structural damage to vehicles and estimating the cost to repair damage to

11  vehicles.

12        16.    On information and belief, VSG's goods and services in general,

13  including those offered under its CHIEF brand, are intended to be used by

14  commercial entities specializing in collision repair, such as major collision repair

15  providers, body shop groups, and dealerships.

16        17.    On information and belief, VSG sells its CHIEF machinery for

17  thousands of dollars to tens of thousands of dollars.  According to its website,

18

19

20

21

22

23

24

25

26

27

28

Case No.
Complaint

1    VSG's products include frame racks, truck lifts, and a heavy duty riveting tool, as

2    shown on its website:

3



16       18.     VSG promotes one of its rivet guns, for which the pump alone weighs

17    more than 23 pounds, as offering 10 metric tons of compression force and 8 metric

18    tons of retraction force and a 100:1 hydraulic ratio:

1
2
3
4
5
6
7
8
9
10
11
12
13
14

19.    For the rivet gun VSG promotes as "lightweight," VSG claims a weight

15

of more than 17 pounds, without the hose, and a pressure rating of 100:1:

16
17
18
19
20
21
22
23
24
25
26
27
28



Case No.
Complaint

20.    On information and belief, VSG also provides training courses, through its CHIEF UNIVERSITY, related to the professional repair industry, such as classes on structural damage analysis, repair and collision theory, computerized measuring training, and design based repairs for collision repair technicians and car appraisers/estimators.  These classes range from 9 hours to multiple days, costing a minimum of $345 and up to more than $1,000.

**A Justiciable Controversy Exists**

21.    On or about June 10, 2018, Harbor Freight applied for registration of the CHIEF mark for use with pneumatic tools (namely, grinders, cut-off tools, scalers, riveters, drills, impact hammers, shears, nibblers and saws). The notice was filed on an intent to use basis pursuant to 15 U.S.C. §1051(b).

22.    On or about December 21, 2018, VSG notified Harbor Freight through its counsel of its objection to Harbor Freight's attempt to register the CHIEF mark for use with pneumatic tools, citing its own registered trademarks and alleged relevant industries.  In this letter, VSG demanded that Harbor Freight abandon its attempt to register the CHIEF mark.

23.    Harbor Freight has used the word "CHIEF" as a mark on pneumatic tool products (specifically, grinders, cut-off tools, scalers, riveters, drills, impact hammers, shears, nibblers, and saws) in commerce since at least December 2018.

24.    Between December 2018 and June 2019, VSG and Harbor Freight exchanged letters through their respective counsel regarding Harbor Freight's trademark application for the CHIEF mark.  VSG's letters communicated on several occasions that it believed there was a likelihood of confusion between the parties' marks.  For instance, on March 11, 2019, VSG stated, "VSG's CHIEF brand of products and Harbor Freight's 'Chief' products *are* closely related.  They are all used for automotive repair and maintenance . . . . are in the same price range . . . .

1    and are available for purchase by professionals as well as do-it-yourself home

2    mechanics."  VSG further wrote:

> "In addition to confusion as to source, perhaps the greater concern in this case is the additional and significant risk of confusion as to sponsorship, affiliation or connection. . . .  Again, the 'Chief' air cut-off tool is a perfect example of a product that consumers might wrongly believe is affiliated with or sponsored by VSG or with respect to which VSG licensed to Harbor Freight the right to use the 'Chief' name and trademark.  To conclude, Harbor Freight's use of 'Chief' for products such as the air cut-off tool will likely cause confusion in the marketplace."

8    25.    On or about June 5, 2019, VSG wrote that it was "very much concerned

9    about the likelihood of confusion in regard to [Harbor Freight's] use of 'Chief.'" In

10   particular, VSG's letter complained that specific aspects of Harbor Freight's use of

11   CHIEF in the marketplace, including the font, which is not claimed in Harbor

12   Freight's registration application, are likely to cause confusion.

13   26.    On or about August 28, 2019, VSG filed a Notice of Opposition against

14   Harbor Freight's U.S. Trademark Application Ser. No. 87955920, invoking the

15   language of trademark infringement and dilution.

16   27.    VSG's Notice of Opposition alleged that "Harbor Freight's CHIEF []

17   Mark is identical to the CHIEF Registered Marks in look, sound, and commercial

18   impression."  VSG also alleged that "VSG's CHIEF products and Harbor Freight's

19   CHIEF products are the same product."

20   28.    VSG alleged that Harbor Freight's CHIEF mark "when used in

21   connection with Harbor Freight's CHIEF Products, is confusingly similar to VSG's

22   CHIEF Registered Marks, used in connection with VSG's CHIEF products, such

23   that one would reasonably expect them both to emanate from the same source, and

24   the contemporaneous use thereof is likely to cause confusion, mistake, or

25   deception."

26   29.    VSG alleged "given VSG's long-standing use and promotion of its

27   CHIEF Registered Marks and the resulting recognition of the CHIEF Registered

28

-11-

1 | Marks in the relevant marketplace, Harbor Freight's CHIEF Applied-for Mark is

2 | likely to cause confusion with VSG's CHIEF Registered Mark."

3 |      30.    VSG alleged that "Harbor Freight's CHIEF Products, advertised and

4 | sold under Harbor Freight's CHIEF [] Mark, are offered to the same purchasing

5 | public as that of VSG's CHIEF Products which are advertised and sold under the

6 | CHIEF Registered Marks."

7 |      31.    VSG alleged that "Harbor Freight's CHIEF Products on the one hand,

8 | and VSG's CHIEF Products on the other hand, are presumed to travel in the usual

9 | channels of trade for such goods and presumed to be purchased by the usual class of

10 | purchasers for such goods, which are professionals in the vehicle repair and

11 | maintenance industry and consumers who engage in do-it-yourself vehicle repair."

12 |      32.    VSG alleged that the purported confusion "that Harbor Freight offers

13 | VSG's goods or that Harbor Freight's goods emanate from, or are in some way

14 | associated or connected with, or sponsored, licensed, or authorized by VSG, all to

15 | the damage of VSG."  VSG further alleged that "[t]he use of CHIEF by Harbor

16 | Freight also constitutes an attempt to palm off and appropriate to itself VSG's

17 | exclusive rights in the mark CHIEF® for vehicle collision repair equipment,

18 | services and tools."  VSG further alleged that "[t]he recent and subsequent use of

19 | Harbor Freight's CHIEF by Applicant dilutes the distinctiveness of VSG's CHIEF

20 | Registered Mark."

21 |      33.    Based on these statements, VSG's Notice of Opposition alleged a prima

22 | facie case of trademark infringement and dilution against Harbor Freight.

23 |      34.    The U.S. Supreme Court has established that a court should give

24 | preclusive effect to Trademark Trial and Appeal Board ("TTAB") decisions if the

25 | ordinary elements of issue preclusion are met.  *B & B Hardware v. Hargis*

26 | *Industries*, 135 S.Ct. 1293 (2015).  Accordingly, the filing of an opposition notice to

27 | a trademark application, when the applicant is currently using the mark, gives rise to

28 | the possibility that the TTAB's decision concerning infringement and dilution will

Case No.
Complaint

1    be binding for all purposes.  VSG's correspondence with Harbor Freight further

2    confirms that VSG does not intend to allow Harbor Freight's current use of CHIEF

3    to go unchallenged.

4         35.    Harbor Freight disputes VSG's contention that there is a likelihood of

5    confusion and does not intend to cease use of the CHIEF mark on its pneumatic

6    tools, due to the different nature of the parties' respective goods, varied price points,

7    separate channels of trade, and distinct target customer bases for each party.

8         36.    Harbor Freight also disputes VSG's contention that there is a likelihood

9    of dilution and does not intend to cease use of the CHIEF mark on its pneumatic

10   tools.  VSG's CHIEF mark, used on high-cost commercial-grade collision repair

11   equipment, is not "widely recognized by the general consuming public of the United

12   States as a designation of source of the goods or services of the mark's owner" and

13   is therefore not "famous" under 15 U.S.C. § 1125(c).  Even if it was, the

14   marketplace circumstances of the parties' use render dilution unlikely.

15        37.    This matter is ripe for a declaratory judgment.

**COUNT I:**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF**
**TRADEMARK**

18        38.    Harbor Freight incorporates paragraphs 1 through 38 herein by

19   reference.

20        39.    VSG has engaged in conduct that gives rise to a real and reasonable

21   apprehension on the part of Harbor Freight that it will face an action for injunctive

22   relief and/or damages for trademark infringement under Section 32(1) of the

23   Lanham Act, 15 U.S.C. § 1114(1), if Harbor Freight continues its activities,

24   including its advertising, promotion, and sale of pneumatic tools bearing the CHIEF

25   mark.  Harbor Freight seeks a declaration of non-infringement and non-dilution with

26   respect to its use of CHIEF so that it can proceed with its business plans without the

27   continuing risk of having to change its mark.  There is a substantial controversy

28   between Harbor Freight and VSG with respect to Harbor Freight's use of its CHIEF

Case No.
Complaint

1   mark.  The two parties have adverse legal interests of sufficient immediacy and

2   reality to warrant the issuance of a declaratory judgment.

3        40.    Harbor Freight's use of CHIEF does not infringe any of VSG's

4   registered marks or any other trademark rights owned by VSG.

5        41.    Harbor Freight's use of CHIEF is not likely to cause confusion as to the

6   source, sponsorship, affiliation, or connection to any entity other than Harbor

7   Freight.  In particular, Harbor Freight CHIEF products are intended to be used by

8   individual retail customers, particularly do-it-yourselfers, and are priced

9   accordingly.  Harbor Freight's products bearing the CHIEF mark are priced from

10   approximately $6.00 to approximately $140.00.  They are not designed for or

11   promoted to be used in commercial or industrial environments.

12        42.    All of Harbor Freight's products, including its CHIEF products, are

13   sold direct to consumer only through Harbor Freight's HARBOR FREIGHT

14   channels of trade—namely its HARBOR FREIGHT retail stores, its

15   HarborFreight.com website and its HARBOR FREIGHT mail order catalogs.

16   Harbor Freight does not promote, display or sell its products, including its CHIEF

17   products, through third party retail stores, catalogs, or websites.

18        43.    Moreover, Harbor Freight primarily sells its own house-branded tools.

19   Accordingly, Harbor Freight consumers expect that the tools they buy from Harbor

20   Freight are sourced from Harbor Freight.  As result, the parties' respective CHIEF

21   goods are not promoted, sold or displayed in or on the same store, catalog, or

22   website.  There is no likelihood of confusion between the parties' respective

23   products bearing the CHIEF mark.

24        44.    An actual, present, and justiciable controversy has arisen between

25   Harbor Freight and VSG concerning Harbor Freight's CHIEF products.  Harbor

26

27

28

Case No.
Complaint

Freight and VSG have adverse legal interests. The dispute between Harbor Freight and VSG is substantial, definite and immediate, and not hypothetical.

45. A declaratory judgment of non-infringement should be entered in Harbor Freight's favor.

46. To resolve the legal and factual questions and afford relief from the uncertainty and controversy raised by VSG's communications and Notice of Opposition and the allegations therein, Harbor Freight is entitled to a declaratory judgment of its rights under 28 U.S.C. §§ 2201-02.

## COUNT II:
## DECLARATORY JUDGMENT OF NO DILUTION OF TRADEMARK

47. Harbor Freight incorporates paragraphs 1 through 46 herein by reference.

48. VSG has engaged in conduct that gives rise to a reasonable apprehension on the part of Harbor Freight that it will face an action for injunctive relief and/or damages for trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. 1125 (c), if Harbor Freight continues its activities including its advertising, promotion, and sale of pneumatic tool products under Harbor Freight's CHIEF Mark.

49. VSG's CHIEF mark is not famous nor has it ever been famous. VSG's CHIEF mark is not widely recognized by the general consuming public of the United States as a designation of source of the goods or services of VSG.

50. While Harbor Freight uses its CHIEF Mark in commerce, Harbor Freight's use of CHIEF does not dilute VSG's CHIEF mark by diminishing the capacity of the mark to identify and distinguish goods and services. Harbor Freight's use of its CHIEF mark does not weaken, blur, or tarnish VSG's CHIEF mark.

51. VSG is not entitled to injunctive relief or to any of the monetary remedies set for in Section 35 of the Lanham Act, 15 U.S.C. 1117, including but not

Case No.
Complaint

limited to profits, damages, costs, or attorney's fees, for trademark dilution based on Harbor Freight's use of its CHIEF Mark in connection with the advertising, promotion, and sale of its pneumatic tools in the United States.

52.    An actual, present, and justiciable controversy has arisen between Harbor Freight and VSG concerning Harbor Freight's use of CHIEF on its products. Harbor Freight and VSG have adverse legal interests.  The dispute between Harbor Freight and VSG is substantial, definite and immediate, and not hypothetical.

53.    A declaratory judgment of no dilution should be entered in Harbor Freight's favor.

54.    To resolve the legal and factual questions and afford relief from the uncertainty and controversy raised by VSG's communications and Notice of Opposition and the allegations therein, Harbor Freight is entitled to a declaratory judgment of its rights under 28 U.S.C. §§ 2201-02.

## **PRAYER FOR RELIEF**

WHEREFORE, Harbor Freight prays for the following relief:

1.    A judgment declaring that Harbor Freight does not infringe or dilute any trademark rights owned by VSG.

2.    A judgment declaring that Harbor Freight has the right to use the word "CHIEF" in connection with its products sold and offered for sale by Harbor Freight, free from interference from VSG, its officers, agents, employees, attorneys, privies, representatives, successors and assigns, and any and all persons acting in active concert or participation with or under authority from VSG.

3.    A judgment instructing the Patent Trademark Office to allow Harbor Freight to register its CHIEF mark for use on its pneumatic tool products

Case No.
Complaint

1    (specifically, grinders, cut-off tools, scalers, riveters, drills, impact hammers, shears,

2    nibblers, and saws) pursuant to 15 U.S.C. § 1119.

3        4.    An award of costs in this action.

4        5.    A finding that this case is "exceptional" within the meaning of 15

5    U.S.C. § 1117 and a corresponding award of attorneys' fees in Harbor Freight's

6    favor.

7        6.    For such other, further, or different relief as the Court deems just and

8    proper.

9

10    DATED:  November 1, 2019        QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP
11

12

13                                     By    /s/ David M. Grable
14                                        David M. Grable
                                          Attorneys for Plaintiff Harbor Freight
15

16

17

18

19

20

21

22

23

24

25

26

27

28